**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

COLLEEN A. FABRICK,
        Appellant,

      v.

DEPARTMENT OF THE TREASURY,
        Agency.

DOCKET NUMBER
CH-1221-15-0703-W-1

DATE: January 6, 2017

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Colleen A. Fabrick, Chicago, Illinois, pro se.

Russ Eisenstein, Esquire, and Pamela D. Langston-Cox, Esquire, Chicago, Illinois, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of Board jurisdiction. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. However, for the reasons set forth below, we MODIFY the initial decision to find that the appellant failed to make a nonfrivolous allegation of a protected disclosure under 5 U.S.C. § 2302(b)(8), and AFFIRM the dismissal of the appeal for lack of Board jurisdiction.

## BACKGROUND

¶2        The appellant is a Human Resources Assistant (Labor Relations), GS-0203-07, at the agency's Internal Revenue Service (IRS) Human Capital Office in Chicago, Illinois. Initial Appeal File (IAF), Tab 11 at 30. In March 2012, she received a temporary promotion to the position of Human Resources Specialist, GS-0201-09. *Id.* at 46. That promotion ended in June 2012. *Id.* at 45. In 2013, the appellant filed an equal employment opportunity (EEO) complaint alleging age and race discrimination. *Id.* at 25-29.

¶3        In September 2014, the appellant was detailed for 60 days to the Leadership Succession, Readiness and Development (LEADS) group. *Id.* at 32-35. The detail was briefly extended, but ended on December 28, 2014. *Id.* In early 2015, an opportunity for a temporary part-time promotion became available in the agency's Executive Misconduct Unit (EMU). *Id.* at 12-13. Although she applied for the opportunity, the appellant was not selected. *Id.*; IAF, Tab 1 at 1, Tab 4

at 11. The Associate Director of the Labor/Employee Relations (LER) office explained that she did not recommend the appellant for the opportunity because she previously had been given such an opportunity, whereas the selectee had not. IAF, Tab 11 at 12-13. In March 2015, management in LEADS asked the appellant to serve a second detail there. *Id.* at 13-16. However, the appellant's immediate supervisor in consultation with her second-level supervisor determined that the appellant would not be released for the detail because there were staffing and workload concerns within her permanent group. *Id.*

¶4    The appellant filed a complaint with the Office of Special Counsel (OSC) on March 24, 2015, alleging that she had made two protected disclosures to the Treasury Inspector General for Tax Administration (TIGTA) in August 2013 and had subsequently been denied a temporary promotion and a second detail to LEADS. IAF, Tab 4 at 4-12. On July 27, 2015, OSC informed her that it had terminated its inquiry into her complaint, Case No. MA-15-3028, and apprised her of her Board appeal rights. *Id.* at 26.

¶5    On April 1, 2015, the appellant filed a motion to amend her ongoing EEO complaint to include the denial of the temporary promotion to the EMU. IAF, Tab 11 at 25-29. On July 2, 2015, an Equal Employment Opportunity Commission administrative judge denied the appellant's motion to amend her complaint and ordered the agency to advise her of the right to file a new complaint concerning the temporary promotion. *Id.* at 29. The agency informed the appellant of her rights, and she filed another EEO complaint on August 19, 2015. *Id.* at 17-25.

¶6    On September 24, 2015, the appellant filed this appeal. IAF, Tab 1. The administrative judge issued an order informing the parties of the jurisdictional issues and directing the appellant to submit evidence and argument to establish the Board's jurisdiction over her appeal. IAF, Tab 3. In response, the appellant identified two disclosures that she believed were protected under 5 U.S.C.

§ 2302(b)(8). She identified these disclosures in her OSC complaint, and they were listed in OSC's close-out letter. IAF, Tab 4 at 9, 26.

¶7 The appellant's alleged protected disclosures are two complaints she lodged in August 2013 with the TIGTA. The appellant initially contacted TIGTA regarding a "'suspicious crash' possibly fraud" of the IRS Employee Suggestion Program website, which she alleged occurred briefly after she submitted a suggestion regarding labor and employee relations training for new managers. *Id.* at 1. The appellant claimed that she never received a response or decision from the agency regarding her suggestion, though "portions of [her] suggestion appear to have been implemented." *Id.* The TIGTA complaint information form attached to her jurisdictional response states that she "reported that she did not receive a monetary award after the IRS implemented a suggestion she submitted to the IRS as part of the Employee Suggestion Program and the President's Securing Americans' Value and Efficiency (SAVE) Award program." *Id.* at 31, 41. The appellant filed a second complaint with TIGTA on August 27, 2013, alleging "illegal threats" and "serious abuse" by the Associate Director of the LER office on four occasions since she began working for the IRS in 2007. *Id.* at 1, 9, 55-57.

¶8 A TIGTA Special Agent in Chicago, Illinois, received both of the appellant's complaints. *Id.* at 2. TIGTA decided not to investigate either of the complaints and informed the appellant of its decision. IAF, Tab 11 at 11. The Special Agent did not contact any IRS manager or employee, other than the appellant, regarding the complaints. *Id.* Instead, "[c]onsistent with TIGTA's procedures, the complaints were forwarded to the IRS Employee Conduct and Compliance Office (ECCO) for informational purposes only." *Id.*

¶9 In her response to the Board's jurisdictional order, the appellant identified the following personnel actions as those she believed were taken in retaliation for protected disclosures: (1) the agency's failure to select her for the temporary promotion in the EMU in January 2015; and (2) the agency's denial of a second

detail opportunity in LEADS around May 2015. IAF, Tab 4 at 2; *see* 5 U.S.C. § 2302(a)(2)(A). She reported these actions to OSC in her complaint. IAF, Tab 4 at 8, 18, 22.

¶10 The administrative judge issued an initial decision dismissing the appeal for lack of Board jurisdiction without holding a hearing, finding that the appellant failed to make a nonfrivolous allegation of the Board's jurisdiction.[2] IAF, Tab 14, Initial Decision (ID) at 2, 11. The administrative judge did not determine whether the appellant's alleged protected disclosures met the statutory definition and found instead that she had failed to nonfrivolously allege that her disclosures contributed to the agency's decision not to temporarily promote or detail her. ID at 8-9. The administrative judge noted that the appellant's September 2014 LEADS detail took place more than a year *after* her alleged protected disclosures to TIGTA, and so "[i]t belies logic" that the agency's subsequent refusal to release her for second LEADS detail was retaliatory, given that it approved her for the first detail. ID at 9. The administrative judge found that the unrebutted evidence showed that her supervisors had no knowledge of her alleged protected disclosures until October 2015, after she filed her Board appeal. ID at 9; *see* IAF, Tab 11 at 11, 13-14, 16. The administrative judge thus concluded that, because the appellant did not show that her disclosures could have contributed to her supervisors' decisions not to afford her either the temporary promotion or the detail opportunity, the appellant failed to meet her jurisdictional burden. ID at 9-10.

¶11 The administrative judge additionally determined that the appellant failed to establish the Board's jurisdiction over her nonselection pursuant to section 2302(b)(9), because the underlying allegations in her 2013 EEO complaint focused on title VII claims of race and age discrimination, and she did not

---

[2] The initial decision we have cited is a revised initial decision, which corrected the finality date in the initial decision. *Compare* IAF, Tab 14, Initial Decision at 11, *with* IAF, Tab 12 at 11.

characterize her complaint as a protected disclosure in her filing with OSC. ID at 10-11. Here, the administrative judge noted that the EEO complaints she had filed were ongoing and "best-suited for resolution through the Equal Employment Opportunity . . . process, which is where they currently are." *Id.* The appellant filed this petition for review.[3] Petition for Review (PFR) File, Tab 1.

## ANALYSIS

¶12      An appellant bears the burden of proving the Board's jurisdiction over her appeal by a preponderance of the evidence. 5 C.F.R. § 1201.56(b)(2)(A). To establish the Board's jurisdiction over an IRA appeal, an appellant must have exhausted her administrative remedies before the OSC and make nonfrivolous allegations of the following: (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity as specified in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a)(2)(A). 5 U.S.C. §§ 1214(a)(3), 1221; *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016); *see Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001).

¶13      A protected disclosure for purposes of whistleblowing is one that the appellant reasonably believed evidenced gross mismanagement, a gross waste of funds, an abuse of authority, a substantial and specific danger to public health or safety, or any violation of a law, rule, or regulation. 5 U.S.C. § 2302(b)(8)(A).

---

[3] The appellant appended to her petition for review several documents that are not already in the record. The documents she included are information and correspondence pertaining to her TIGTA complaints and to the functions of the EMU. PFR File, Tab 1 at 8-23. Under 5 C.F.R. § 1201.115(d), the Board generally will not consider evidence submitted for the first time with the petition for review absent a showing that it was unavailable before the record was closed despite the party's due diligence. *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980); 5 C.F.R. § 1201.115(d). All of the documents included predate the October 30, 2015 close of the record in the proceeding before the administrative judge. IAF, Tab 8. The appellant has not shown these documents were unavailable to her before the close of the record despite her due diligence, and so we will not consider them.

The disclosure must have been specific and detailed, not a vague allegation of wrongdoing regarding broad or imprecise matters. *Rzucidlo v. Department of the Army*, 101 M.S.P.R. 616, ¶ 13 (2006). In other words, conclusory, vague, or unsupported allegations are insufficient to support a nonfrivolous allegation of jurisdiction in an IRA appeal. *Ontivero v. Department of Homeland Security*, 117 M.S.P.R. 600, ¶ 15 (2012). Conversely, nonfrivolous allegations of Board jurisdiction are allegations of fact that, if proven, could establish that the Board has jurisdiction over the appeal. *See* 5 C.F.R. § 1201.4(s). An allegation generally will be considered nonfrivolous when, under oath or penalty of perjury, an individual makes an allegation that is more than conclusory, plausible on its face, and material to the legal issues in the appeal. *Id.*

¶14    The administrative judge found that the appellant had exhausted her remedies with OSC. ID at 8. The administrative judge rendered no decision regarding the appellant's alleged protected disclosures—the TIGTA complaints— except to opine that her allegations regarding those disclosures might be deficient. ID at 9. Instead, she concluded that the Board lacks jurisdiction over the appeal based on her finding that the appellant failed to nonfrivolously allege that the complaints contributed to the agency's failure to temporarily promote her and to detail her to LEADS for a second time. ID at 8-10. The administrative judge relied upon agency-submitted declarations from the appellant's supervisors stating that they were unaware of her TIGTA complaints prior to her filing of this appeal. ID at 9; *see* IAF, Tab 11 at 11, 13-14, 16.

¶15    On review, the appellant argues that because the LER Associate Director had administrative oversight over the EMU, "any reasonable person" would conclude that the Associate Director and her assistant (the appellant's first-level supervisor) "had knowledge either direct or indirect of [her] hostile work environment claims." PFR File, Tab 1 at 3. She asserts that the agency simply withheld evidence that would rebut the supervisors' declarations. *Id.* at 4.

¶16     At this stage of the proceedings, the appellant's burden is only to make nonfrivolous allegations. *Jessup v. Department of Homeland Security*, 107 M.S.P.R. 1, ¶ 10 (2007). Although the appellant has not presented any evidence supporting her assertion that the LER Associate Director's oversight over the EMU extended to the ECCO, where the TIGTA complaints were forwarded, IAF, Tab 11 at 11, the agency's evidence regarding the supervisors' knowledge or lack thereof merely contradicts the appellant's allegations. In determining whether an appellant has made a nonfrivolous jurisdictional allegation, the administrative judge may consider the agency's documentary submissions; however, to the extent that the agency's evidence constitutes mere factual contradiction of the appellant's otherwise adequate prima facie showing of jurisdiction, the administrative judge may not weigh evidence and resolve conflicting assertions of the parties, and the agency's evidence may not be dispositive. *Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶ 11 (2014); *Inman v. Department of Veterans Affairs*, 112 M.S.P.R. 280, ¶¶ 7, 11 (2009). The administrative judge thus should not have considered the agency's declarations as dispositive. Accordingly, we vacate the findings as to whether the appellant nonfrivolously alleged that her disclosures contributed to the agency's alleged failure to take certain personnel actions.

¶17     We need not remand the appeal, however, because the record does not support a finding that the appellant met the first prong of the jurisdictional standard. The appellant identified two alleged protected disclosures in her jurisdictional response, and OSC addressed these disclosures in its close-out letter. IAF, Tab 4 at 1-3, 26. According to the appellant, both disclosures occurred in August 2013, and both were made in complaints submitted to the same TIGTA agent in Chicago, Illinois. *Id.* at 2, Tab 11 at 11. TIGTA has independent authority to determine whether to investigate complaints it receives, and it decided not to investigate either of the appellant's complaints. IAF, Tab 4 at 1-2, Tab 11 at 11.

¶18    The appellant's first complaint pertains to a "suspicious crash" of the agency's website for the collection of employee suggestions shortly after she submitted a suggestion to the SAVE Award program pertaining to the curriculum used in the training of new agency managers.  IAF, Tab 4 at 1, 31, 41, 50.  The appellant submitted her suggestion in 2010.  *Id.* at 50.  In the aftermath of the crash, she asserted, "portions of [her] suggestion appear to have been implemented," but she never received a response or decision regarding her suggestion.  *Id.* at 1.  The appellant's second TIGTA complaint alleged "illegal threats, serious abuse and demonstrated prohibited personnel practices" by the LER Associate Director on four occasions from the time she began working for the IRS in 2007 through May 2013.  *Id.* at 1, 56.

¶19    A protected disclosure is one that an employee reasonably believed evidenced gross mismanagement, a gross waste of funds, an abuse of authority, a substantial and specific danger to public health or safety, or any violation of a law, rule, or regulation.  5 U.S.C. § 2302(b)(8)(A).  An appellant need not prove that the matter she disclosed established any of these conditions.  *Applewhite v. Equal Employment Opportunity Commission*, 94 M.S.P.R. 300, ¶ 12 (2003).  Instead, she must have nonfrivolously alleged that the matter she disclosed was one that a reasonable person in her position would believe evidenced any of these conditions.  *Id.*  The test for determining whether or not her belief was reasonable is to inquire whether a disinterested observer with knowledge of the essential facts she knew or could readily ascertain could reasonably conclude that the agency's actions evidenced one of the conditions set forth in the statute.  *Id.*

¶20    We conclude that the appellant could not have reasonably believed that the actions she was reporting to TIGTA evidenced any of these conditions.  She did not allege that the disclosed actions violated any law, rule, or regulation, nor did she assert that they constituted a substantial and specific danger to public health or safety, or a gross waste of funds.  Her disclosures appear to have been allegations of either gross mismanagement or abuse of authority.  Gross

mismanagement means a management action or inaction that creates a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission. *White v. Department of the Air Force*, 63 M.S.P.R. 90, 95 (1994). An abuse of authority occurs when a Federal official or employee arbitrarily or capriciously exercises power and adversely affected anyone's rights or causes personal gain or advantage to himself or to someone he prefers. *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 10 n.3 (2015).

¶21        As for her first alleged protected disclosure, the appellant failed to offer any evidence that her allegation of a suspicious computer crash and possible fraud were anything other than mere speculation. A disinterested observer with knowledge of the essential facts that the appellant knew or could readily ascertain could not reasonably conclude that agency personnel caused or allowed to occur such a systems failure so that the appellant's submission to the SAVE Award program would be lost in order to avoid paying the award she would have otherwise won in that Government-wide competition. The appellant offered no evidence that the relevant computer system crashed during the relevant timeframe. Her allegations regarding such a crash have evolved over time. Other than to allege that her SAVE Award suggestion was stolen, she did not speculate in her TIGTA complaint as to why she did not receive an award for her suggestion or suggest that the agency's Employee Suggestion Program website failed while her suggestion was pending. IAF, Tab 4 at 31, 41, 50. In her OSC complaint, she explained that she recalled that a computer crash "supposedly occurred exactly during the timeframe I submitted a very valuable suggestion to the proper platform" after she heard about other systems problems at the agency in the summer of 2013. *Id.* at 9. In her jurisdictional response for this appeal, she stated that such a system crash "supposedly" occurred, and that "to ensure the truth," it was incumbent on TIGTA to investigate what had occurred "in light of what appears to be many other 'suspicious' IRS computer crashes." *Id.* at 1-2. Even if the appellant had shown that a systems failure occurred, she has not made

a nonfrivolous allegation that she reasonably believed such a failure created a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission, or that someone intentionally caused it to block her submission for the SAVE Award program. To the contrary, the evidence she submitted shows that her entry was received and considered, but did not merit an award. *Id.* at 48.

¶22    As for her second alleged protected disclosure, we likewise cannot find that the appellant reasonably believed that the four incidents she disclosed evidenced a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission. As for whether the incident represented an abuse of authority, the Board has found that supervisory bullying and intimidation may be abuse of authority, *Special Counsel v. Costello*, 75 M.S.P.R. 562, 580 (1997), *rev'd on other grounds*, 182 F.3d 1372 (Fed. Cir. 1999), and that there is no de minimis standard for abuse of authority, *D'Elia v. Department of the Treasury*, 60 M.S.P.R. 226, 232 (1993), *overruled on other grounds by Thomas v. Department of the Treasury*, 77 M.S.P.R. 224 (1998), *overruled in part on other grounds by Ganski v. Department of the Treasury*, 86 M.S.P.R. 32 (2000).

¶23    Nevertheless, nothing the appellant disclosed would lead a disinterested observer with knowledge of the essential facts that she knew or could readily ascertain to reasonably conclude that the LER Associate Director engaged in such an arbitrary or capricious exercise of power. Only two of the four alleged incidents directly involved the appellant's encounters with the LER Associate Director. In one such incident, the LER Associate Director allegedly told the appellant that she was "unreliable and unable to perform her job correctly" during a staff meeting related to a "furlough project." IAF, Tab 4 at 66. In an email message to TIGTA supporting her complaint, however, the appellant described the LER Associate Director *complimenting* one of her coworkers for reliably completing an assigned project. *Id.* at 100. In another of the incidents, which occurred when the appellant met the LER Associate Director during her first

week of work, the Associate Director opined that the appellant's sandals were not appropriate office attire. *Id.* at 69. The appellant explained that she had been wearing the sandals for medical reasons. *Id.* It is difficult to see how a reasonable person would construe the LER Associate Director's comment under the circumstances as anything other than an attempt to inform a new employee about appropriate office attire. The other two allegations are briefly described in the appellant's email correspondence with TIGTA. *Id.* at 99-101. One such incident pertains to a "snide comment" made by a person other than the LER Associate Director suggesting that the appellant would be absent from work because she was "going before Congress to testify" rather than absent because of upcoming medical leave. *Id.* at 100. The other allegation is the appellant's general observation regarding the Associate Director's demeanor and mannerisms.[4] *Id.* at 99-101. Even if the LER Associate Director spoke in a "loud threatening (bullying) tone [that] can be heard all throughout [the] workspace," as the appellant alleged, *id.* at 101, she failed to make a specific and detailed allegation of wrongdoing, *see Rzucidlo*, 101 M.S.P.R. 616, ¶ 13; *cf., e.g.*, *Murphy v. Department of the Treasury*, 86 M.S.P.R. 131, ¶ 7 (2000) (holding that a supervisor who engaged in "threats, swearing, [and] physical acts of aggression" to intimidate the appellant and other staff members into following the supervisor's requests without question was abusing his authority). We thus find that the appellant failed to make a nonfrivolous allegation of having made a protected disclosure under 5 U.S.C. § 2302(b)(8).

¶24        Because the appellant failed to meet the first prong of the jurisdictional standard, there is no need to issue a formal finding regarding whether the appellant nonfrivolously alleged that the agency took or failed to take a personnel

---

[4] To the extent that the appellant's OSC complaint describes additional incidents, IAF, Tab 4 at 7-8, she has not alleged reprisal for disclosing these matters to OSC. The record also includes a document that appears to have been prepared for the appellant's EEO complaint, wherein she described various incidents. *Id.* at 82-90.

action as defined by the statute, though we note that the actions she alleged on their face would fall within the statutory definition. *See* 5 U.S.C. § 2302(a), (2)(A)(ii), (iv), (xii). There is also no need to address issues the appellant raises that might go to whether the agency would have met its burden to prove by clear and convincing evidence that it would have declined to take the same personnel action in the absence of any protected disclosure. 5 U.S.C. § 1221(e); *Whitmore v. Department of Labor*, 680 F.3d 1353, 1367 (Fed. Cir. 2012); *see* PFR File, Tab 1 at 1.

¶25    The appellant also asserts on review that her 2013 EEO complaint constitutes a protected whistleblowing disclosure or activity. PFR File, Tab 1 at 2, 5. The administrative judge found that the appellant did not claim that her EEO complaint was a protected disclosure, and in any event, she did not exhaust her administrative remedies with OSC for that complaint. ID at 4 n.2, 10; *see Cassidy v. Department of Justice*, 118 M.S.P.R. 74, ¶ 5 (2012) (finding that an employee seeking corrective action for whistleblower reprisal under 5 U.S.C. § 1221 is required to seek corrective action from OSC before appealing to the Board). Here, the appellant raises a new argument for the first time on review. The Board generally will not consider an argument raised for the first time absent a showing that it is based on new and material evidence not previously available despite the party's due diligence. *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980); 5 C.F.R. § 1201.115(d). The appellant has not made such a showing. To the extent that the appellant is reasserting issues she raised before the administrative judge, we find that she has not established error. Although attachments to her jurisdictional pleading reference her EEO complaints, she did not specifically allege that her 2013 complaint was one of her protected disclosures. IAF, Tab 4 at 1-3. The appellant discussed her EEO complaint with OSC and opined that the agency had not processed it to her satisfaction, but she did not assert therein that she considered her complaint to be one of her protected disclosures, nor did OSC treat it as such. *Id.* at 9, 22, 26.

¶26     Likewise, the appellant's possible claim–that her filing the EEO complaint constituted whistleblowing activity and that the agency retaliated against her for that activity–is unavailing under the circumstances. Reprisal for filing an EEO complaint is a prohibited personnel practice under 5 U.S.C. § 2302(b)(1) and (b)(9), not 5 U.S.C. § 2302(b)(8). *See Mahaffey v. Department of Agriculture*, 105 M.S.P.R. 347, ¶ 20 n.8 (2007) (clarifying that a claim of retaliation for filing an EEO complaint may be pursued under either 5 U.S.C. §§ 2302(b)(1) or 2302(b)(9)). The Whistleblower Protection Enhancement Act of 2012 extended the Board's jurisdiction over IRA (whistleblower) appeals to claims of reprisal for filing complaints seeking to remedy whistleblower reprisal under 5 U.S.C. § 2302(b)(8), but not to other types of complaints, filed by the appellant on his or her own behalf, that do not concern remedying a violation of subparagraph (b)(8). 5 U.S.C. §§ 1221(a), 2302(b)(9)(A); *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 7 (2013). In any event, as stated above, the administrative judge correctly found that the appellant failed to exhaust her administrative remedies at OSC as to her EEO complaint. ID at 10. Accordingly, we affirm the administrative judge's findings regarding these issues. ID at 10-11.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.  The court of appeals must receive your petition for review within 60 days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both.  Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.  Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below:
http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                         _____
                                        Jennifer Everling
                                        Acting Clerk of the Board

Washington, D.C.